## Richmond

BOARD OF SUPERVISORS OF LOUISA COUNTY, ET AL. v. VIRGINIA ELEC-
TRIC AND POWER COMPANY.

November 27, 1972.

Record No. 7871.

Present, All the Justices.

*S. Page Higginbotham; W. W. Whitlock*, for appellants.

*Evans B. Brasfield (George D. Gibson; Joseph M. Spivey, III; Guy
T. Tripp, III; Thomas G. Slater, Jr.; Hunton, Williams, Gay & Gib-
son*, on brief), for appellee.

HARRISON, J., delivered the opinion of the court.

The Virginia Electric and Power Company filed separate petitions
before the Boards of Supervisors of Louisa and Spotsylvania Counties
pursuant to Code § 33-76.8 (1950) for the abandonment of portions
of Virginia State Highway #614, including the bridge on this route

over the North Anna River between the counties of Louisa and Spotsylvania, and of portions of Virginia State Highway #654, including the bridge on this route over the north fork of the North Anna River in Spotsylvania County. Following public hearings the boards of the two counties denied the petitions for abandonment. VEPCO appealed the orders of the respective boards to the circuit courts of the counties and, on appeal, the courts determined that no public necessity existed for the continuance of the roads and bridges involved and that the welfare of the public would be best served by their abandonment, and so ordered.

We granted appellants, the Boards of Supervisors of Louisa County, the Town of Mineral and nine interested individuals, an appeal from the judgment of the lower court, limited however to a consideration of two assignments of error: (1) That the proceedings in the lower court were unlawful on the theory that VEPCO was not entitled to appeal from the adverse ruling of the Boards of Supervisors denying abandonment and (2) that the abandonment of the roads and bridges was an unconstitutional taking of public and private property without just compensation. Our decision involves an interpretation of Code §§ 33.1-151 (formerly § 33-76.8) and 33.1-152 (formerly § 33-76.9).

Code § 33.1-151 sets forth the procedure for the abandonment of roads in pertinent part as follows:

"The governing body of any county . . . upon petition of any interested landowner may cause any section of the secondary system of highways . . . deemed by it to be no longer necessary for the uses of the secondary system of highways, to be abandoned altogether as a public road. . . .

"The governing body of the county shall give notice of intention to abandon any such road. . . .

"Upon petition of one or more landowners in the county affected by such proposed abandonment . . . filed with the governing body of the county . . . the governing body shall hold a public hearing on the proposed abandonment. . . .

". . . [I]f after a public hearing is held the governing body is satisfied that no public necessity exists for the continuance of the section of the secondary road as a public road, . . . or that the welfare of the public would be served best by abandoning the section of road . . . as a public road . . . it may enter an order on its minutes abandoning the section of road as a public road . . . and thereupon

the section of road shall cease to be a public road, or if the governing body be not so satisfied it may dismiss the application."

Code § 33.1-152 provides for an appeal to the circuit court from the action of the governing body as follows:

"Any one or more of the petitioners, or the State Highway Commissioner, may within thirty days from the entry of the order by the governing body, ... appeal from the order to the circuit court of the county in which the section of road ... sought to be abandoned is located. Such appeal shall be by petition filed in the clerk's office of such court, setting out the order appealed from and the grounds of such appeal. Upon the filing of such petition, the clerk of the circuit court shall docket the appeal and if the appeal be by any of the landowners who filed a petition with the governing body for a public hearing shall have notice of such appeal served upon the Commonwealth's attorney and the Commissioner and if the appeal be by the Commissioner notice thereof shall be served upon the governing body of the county and landowners who filed petition with the governing body for a public hearing. ... Upon the hearing of the appeal, the court shall ascertain and by its order determine whether public necessity exists for the continuance of the section of road ... or whether the welfare of the public will be served best by abandoning the section of the road ... and shall enter its order accordingly."

█ Appellants contend that the right to appeal from an order of a board of supervisors must be found within the statute, and they construe Code § 33.1-152 as providing for an appeal to the circuit court by two parties only: (1) A landowner who files a petition for a public hearing; and (2) the State Highway Commissioner. We disagree. Clearly Code § 33.1-151 refers to two classes of petitioners. Any interested landowner of a county becomes a "petitioner" by filing with its governing body a petition for the abandonment of a road. The construction, maintenance and abandonment of highways is a matter of universal concern to all residents of a county, not necessarily those individuals who reside on the road involved. VEPCO is such a landowner, with extensive holdings in both Louisa and Spotsylvania Counties. The other class of petitioners referred to in § 33.1-151 consists of landowners of the county affected by such proposed abandonment of a road who become "petitioners" by the

filing of a request or petition with the governing body for a public hearing on the proposed abandonment.

In support of their interpretation appellants reason that if a road is not abandoned, discontinued or relocated, the status quo is not disturbed and no person has been damaged. We cannot accept this reasoning. The landowners of a county have an interest in the maintenance of an efficient and useful system of roads in the county. This interest is not only in the continuance of certain roads that serve the public, but also in the discontinuance and abandonment of roads where no public necessity exists for their continuance, or where the welfare of the public would be best served by their abandonment.

Moreover, Code § 33.1-152, providing for appeals from the action of the governing body and granting the right of appeal to petitioners and the State Highway Commissioner, encompasses *both* classes of petitioners, those who petition for and favor abandonment, and those who petition for a public hearing on the abandonment and presumably are opposed thereto.

Appellants further point to that part of Code § 33.1-152 which concerns the notice to be given by the clerk upon the filing of a petition for appeal, and argue that since no provision is made as to the manner in which and against whom process shall issue in an appeal by "any interested landowner" only those parties for whom process is provided may appeal; that since landowners who petition for abandonment are not entitled to notice, or required to give notice, such a landowner may not be a party to an appeal. Such an interpretation of the statute would be a strained one and would frustrate its obvious intent. An unsuccessful landowner petitioning for abandonment of a road would be denied appeal, and a successful petitioner for abandonment would be prohibited from appearing as a party in an appeal on the ground that the statute does not require notice to be served on him. This would create an unfair advantage for the appealing party in the circuit court where a de novo consideration of the abandonment is required.

It seems plain that the right of an interested landowner who initiates by petition a proceeding for the abandonment of a road to appeal an adverse decision by the governing body is contemplated and preserved by the statute. We will not interpret the unclear provisions of the section regarding notice upon appeal in a manner that would deny such a right. Manifestly the General Assembly contemplated the preservation of an appeal, for Code § 33.1-152 expressly imposes on the court the duty to ascertain and determine public necessity for

the continuance of the road sought to be abandoned and the duty to determine whether the welfare of the public will be served best by such abandonment, and directs the court to enter its order accordingly. This is a complete answer to the additional argument of appellants that no right of appeal from an adverse decision of a board of supervisors is preserved by the statute except where an *order* of abandonment is entered. A resolution or other action of a governing body denying a petition for abandonment is the equivalent of an order denying such abandonment.

We observe that in the instant case notice of its appeals from the orders of the boards of supervisors to the circuit courts was given by VEPCO by publication in newspapers of general circulation in Louisa and Spotsylvania Counties and by service of notice on approximately 450 persons, including the landowners who filed petitions for hearings, the Commonwealth's Attorney and the board of supervisors in each county and the State Highway Commissioner.

■ Appellants' second contention is that the abandonment of the roads and bridges constituted an unlawful and unconstitutional taking of public and private properties for the benefit of a public utility corporation without just compensation. This assignment of error is answered by Code § 33.1-153 (formerly § 33-76.10), which provides as follows:

"In case of the abandonment of any section of road or any crossing under the provisions of this article as a part of the secondary system of highways, such section of road or such crossing, shall not remain a public road or crossing."

Having held that the abandonment proceedings in the instant case were properly conducted, the entry of the final order by the lower court had the effect of removing the roads and bridges in controversy from the public highway system of the Commonwealth. They have ceased to be public roads and public bridges and are no longer a part of the secondary system of highways. The interest of the Commonwealth in these roads and bridges as a way for public travel, and the interests of the persons who use them, have been extinguished. As was stated in *Bond* v. *Green*, 189 Va. 23, 32, 52 S. E. 2d 169, 173 (1949):

"When a highway is discontinued or abandoned, the land used for that purpose immediately becomes discharged of the servitude

and the absolute title and right of exclusive possession thereto reverts to the owner of the fee, without further action by the public or highway authorities. In the absence of evidence to the contrary, the fee is presumed to be in the abutting land owners. If the highway is the boundary line between different tracts, the presumption is that the reversion to each owner is to the center of the highway. [Citing cases.]"

*Smith* v. *Board of Supervisors*, 201 Va. 87, 93-94, 109 S. E. 2d 501, 507 (1959), also involved the abandonment of a public road and a claim by landowners that they had been deprived of their property without due process of law and their property taken without just compensation. We held:

"The sections of the Code here involved adequately protect the constitutional rights of all interested parties, and the record discloses that there was strict compliance with the statutes. All required notices were timely given, and at the various hearings everyone present was given an opportunity to express his views. The trial of the case was carefully conducted. Appellants have not been deprived of their property without due process of law. They have been deprived of no property. Neither has any of their property been taken or damaged for public use without just compensation in contravention of § 58 of the Constitution of Virginia. They have not been damaged in any constitutional sense. They have no vested right in public roads. . . ."

We have carefully considered appellants' assignments of error and arguments advanced in support thereof. The proceedings for the abandonment of the roads and bridges in question were properly conducted under appropriate sections of the Code of Virginia before the boards of supervisors of the two counties and in the court below. As we observed in *Smith* v. *Board of Supervisors, supra,* these sections adequately protect the constitutional rights of all interested parties. The procedure outlined in the sections having been followed, and the roads and bridges abandoned, there is no taking of public property involved here. The fee owned by the abutting landowners was not taken as the result of the abandonment proceedings. When the highway was abandoned the title thereto is presumed to vest in the abutting landowners in the absence of evidence to the contrary. If VEPCO seeks to acquire that property it must pay just compensation

as it must do for all other property acquired by it. The acquisition must be by a proceeding independent of the proceedings which are the subject of the instant case.

The abandonment proceedings before the Boards of Supervisors of Louisa and Spotsylvania Counties and in the courts below, and here on review, do not involve the taking of any public or private property without just compensation. The judgments of the courts below are

*Affirmed.*